A97A0888. GOSS BROTHERS TRUCKING et al. v. ASHLEY.
(492 SE2d 7)

RUFFIN, Judge.

Regina Ashley was involved in an automobile collision with a tractor-trailer owned by Goss Brothers Trucking ("Goss"). Ashley brought this personal injury action against Goss, its driver, and, pursuant to OCGA § 46-7-12 (e), Goss' insurer, Canal Insurance Com-

pany ("Canal"). A jury heard evidence of Ashley's injuries and damages, which included a broken sternum and over $17,000 in medical bills, and returned a verdict against the defendants in the amount of $107,000. The defendants appeal the judgment entered on that verdict. Because we find the trial court should have granted a mistrial when Ashley's attorney presented evidence of the limits of Goss' insurance policy, we reverse and remand for a new trial.

1. The grant of a mistrial is within the discretion of the trial court, and a mistrial is *required* "only where the testimony is so obviously prejudicial in its nature that its adverse effect cannot be eradicated from the minds of the jury or its consequences avoided by proper cautionary instructions from the court." (Punctuation omitted.) *Dubose v. Ross*, 222 Ga. App. 99, 100 (473 SE2d 179) (1996). Here, Ashley's attorney cross-examinined one of the owners of Goss Trucking and established that Goss had a liability insurance policy with Canal. Leading the witness, Ashley's attorney then asked: "And that policy is a one million dollar policy?" Before the witness replied, Goss' attorney objected and moved for a mistrial. The trial court refused to grant a mistrial, but did caution the jury: "Ladies and gentlemen, I want to give you some instructions at this point. As you are aware, a question was asked by plaintiff's counsel as to the amount of liability insurance coverage that was carried by Goss Brothers Trucking. . . . In this particular type of case, . . . [the fact of insurance] is admissible. . . . But the amount of insurance that is carried by Goss Brothers Trucking is completely irrelevant to this case, has nothing to do with it. And as I say, no answer has been given concerning that amount. You should completely disregard the question itself and you should not, in making your deliberations in this case, be influenced in any way by what you may speculate to be the amount of liability insurance coverage carried by [Goss]. That . . . has absolutely nothing to do with this case and you should disregard it." Goss timely renewed its motion for mistrial.

Ashley's leading question was certainly error and grounds for a mistrial. As the Supreme Court held in *Carolina Cas. Ins. Co. v. Davalos*, 246 Ga. 746, 747 (272 SE2d 702) (1980), the law allows evidence in a direct action that the defendant has liability insurance; however, the *amount* of that insurance remains inadmissible because of its prejudicial nature. Id. at 747. See also *Sweat v. Burke*, 156 Ga. App. 637 (276 SE2d 51) (1980) (in direct action case, admission of evidence showing policy limits required reversal of judgment for plaintiff); *Early County v. Fincher*, 184 Ga. App. 47, 48 (1) (360 SE2d 602) (1987) (where evidence of insurance is admissible, limits of policy should be excluded to avoid "probable prejudice" which would result). It is settled law in this State that the erroneous injection of "insurance" into a tort case is grounds for mistrial "[b]ecause of its irrele-

vance and prejudicial value. . . . Such evidence is highly prejudicial and it can influence the entire case, no matter which side attempts to introduce it." *Denton v. Con-Way Southern Express*, 261 Ga. 41, 42 (402 SE2d 269) (1991), disapproved on other grounds, *Grissom v. Gleason*, 262 Ga. 374 (418 SE2d 27) (1992). " '(T)he strict exclusion of [evidence of insurance] is due . . . chiefly to the assumption that a knowledge of the fact of insurance against liability will motivate the jury to be reckless in awarding damages to be paid, not by the defendant, but by a supposedly well-pursed and heartless insurance company that has already been paid for taking the risk.' [Cit.]" *Denton*, supra at 42-43, n. 2.

Ashley's "question" also injected into the case Goss' wealth and ability to pay, an equally improper and prejudicial area of inquiry. See *Adams v. Camp Harmony Assn.*, 190 Ga. App. 506, 508 (379 SE2d 407) (1989). "[N]either the wealth of the plaintiff nor the defendant is relevant. A man's treatment before the bar of Justice should not vary with his financial condition." (Citation and punctuation omitted.) *Denton*, supra at 42.

We believe a mistrial was required in this case. In *Dubose*, supra, the Court found that strong cautionary instructions cured the erroneous mention of insurance. But here, the attorney's question all but informed the jury that Goss could pay *and* that a verdict in excess of $100,000 would be but a fraction of its policy limits. The wrongful mention of *how much* Goss could pay aligns this case with *Adams*, supra. There, the defendant's attorney argued in closing that if the jury awarded damages to the plaintiff, the defendant would no longer be able to afford to conduct his charitable work. Recognizing the highly prejudicial nature of this argument, we held that "no amount of instruction by the trial judge" could cure the inflammatory comments and found a new trial was required despite the trial court's curative instructions. *Adams*, supra at 508.

Ashley argues, and the trial court found, that no mistrial was required because the improper question was never answered. In *Thomas Milling Co. v. Branch*, 118 Ga. App. 857, 858 (1) (165 SE2d 907) (1968), however, this Court found a mistrial warranted where an attorney did nothing more than tell the jury in his opening statement, " '[f]or our own reasons, we are suing for $99,995. We kept it under the $100,000 for our own reasons.' " Combined with the qualification of the jury in voir dire regarding an insurance company, the attorney's statement made it clear that the policy limits were $100,000. Here, similarly, the "question" propounded by Ashley's attorney amounted to a statement of the policy limits, and considering the extent of harm which results from such a statement, the trial

court's efforts to cure the error were admirable but insufficient.[1] For these reasons, we reverse the trial court's judgment and remand this case for a new trial.

2. Goss' second enumeration of error contends the trial court erred by excluding from evidence several pictures of Ashley's car. Goss claims these photos were relevant to show that Ashley's car was damaged only slightly in the collision. The trial court excluded the photos from evidence because they were not listed as evidence in the pre-trial order and because Goss' attorneys did not deliver the photos to Ashley's attorney until the weekend before trial. Under those circumstances, the court found this undisclosed evidence unfairly prejudiced Ashley's ability to present her case. It appears Goss' attorneys had erroneously believed no such pictures existed, but obtained the pictures and delivered them to Ashley's counsel as soon as they learned of the photos.

Although a pre-trial order " 'should not be construed to preclude a party from introducing evidence relating to his case if less harsh sanctions are appropriate[, a]t the same time broad discretion is reposed in the trial court whose decision will not be disturbed except in cases demonstrating a clear abuse of that discretion.' [Cit.]" *Nat. Old Line Ins. Co. v. Lane*, 172 Ga. App. 519, 523 (5) (323 SE2d 707) (1984). We find no abuse of discretion, but on remand the trial court is free to re-examine this issue in light of the fact that these photographs have been available to plaintiff's counsel since the first trial.

*Judgment reversed. Andrews, C. J., Birdsong, P. J., Johnson and Blackburn, JJ., concur. McMurray, P. J., and Senior Appellate Judge Harold R. Banke dissent.*

Judge Harold R. Banke, dissenting.

I respectfully dissent because I cannot agree that the trial court manifestly abused its discretion in denying Goss' motion for mistrial. See *Ga. Power Co. v. Hinson*, 179 Ga. App. 263, 270 (7) (346 SE2d 73) (1986). Appellate courts should not interfere with the exercise of discretion unless wrong or oppression has resulted from an abuse of its use. *Dubose v. Ross*, 222 Ga. App. 99, 100 (473 SE2d 179) (1996).

Ashley sued Goss as a common carrier and instituted a direct action against Canal Insurance Company ("Canal") under OCGA § 46-7-12 (e). The fact that liability insurance existed had to be obvious to the jury inasmuch as Canal was a named party defendant. As we have previously observed, " '[a]ny juror who doesn't know that there is liability insurance in [a case of a motor vehicle collision] . . . should probably be excused by virtue of the fact that he or she is an

---

[1] Colloquy between defense counsel and the court indicates that the limits were actually $750,000, rather than $1 million.

idiot.'" *Smith v. Crump*, 223 Ga. App. 52, 55 (1) (476 SE2d 817) (1996).

In this case, Randy Goss' unobjected-to testimony made abundantly clear to the jury: (1) that Goss had purchased a liability policy from Canal, and (2) that the policy covered the company's trucks and drivers. Compare *Dubose*, 222 Ga. App. at 100 (liability insurance improperly injected in trial). The only remaining uncertainty related to the amount of the applicable policy.

Then Ashley's counsel improperly asked, "And that policy is a one million dollar policy?" This question was never answered. After Goss promptly objected, the trial recessed, and a discussion ensued. Ultimately, the trial court determined that a mistrial was not required and opted to provide curative instructions instead. After the court explained to the jury that Canal was a party defendant, it cautioned, "[i]n this particular type of case in which this truck was involved and due to the nature of the business of Goss Brothers Trucking Company, it is admissible [sic] to file a direct action against a liability insurance company naming it as a party defendant in the case. That is permitted. But the amount of insurance that is carried by Goss Brothers Trucking is completely irrelevant to this case, has nothing to do with it. And as I say, no answer has been given concerning that amount. You should completely disregard the question itself and you should not, in making your deliberations in this case, be influenced in any way by what you may speculate to be the amount of liability insurance coverage carried by Goss Brothers Trucking. That, again, as I say, has absolutely nothing to do with this case and you should disregard it."

Improper injection of insurance evidence does not automatically require reversal. *Getz Terminators &c. v. Towe*, 193 Ga. App. 268, 271 (1) (387 SE2d 338) (1989). "'It is only where the testimony is *so obviously prejudicial in its nature that its adverse effect cannot be eradicated from the minds of the jury* or its consequences avoided by proper cautionary instructions from the court, that a mistrial (reversal) should be granted.' [Cit.]" (Emphasis in original.) Id. at 271 (1). Here, there was no prejudicial testimony because the trial court did not permit the improper question to be answered. In any event, an instruction to a jury to disregard evidence is tantamount to an exclusion. *Locke v. Vonalt*, 189 Ga. App. 783, 786 (3) (377 SE2d 696) (1989).

Notwithstanding the majority's contention to the contrary, *Carolina Cas. Ins. Co. v. Davalos*, 246 Ga. 746 (272 SE2d 702) (1980), neither demands nor authorizes a different result. In *Davalos*, the trial court erroneously admitted evidence of the policy limits over objection. Id. Here, evidence of the policy limits was specifically excluded, and the jury was expressly admonished not to speculate as

to that amount. The jury was further instructed that it was to consider such amount as irrelevant when deliberating. Where, as here, the error is remedied by curative instruction, no mistrial is required and the instructions were sufficient to purge any error which might have occurred. *Locke*, 189 Ga. App. at 786 (3).

Moreover, the record fails to show that the jury improperly considered the policy limits and that Goss was thereby prejudiced or oppressed. Ashley proved she had incurred $17,455.36 in medical expenses. She testified about her lost wages, impaired work ability, and current constant stabbing pain in her chest. Her treating physician of almost two years testified that he considered her injuries to be permanent and painful. He also described her physical limitations, her inability to work, her need for continuing medical treatment and her likely future pain and suffering. Her physician estimated that the therapy she needed for pain management would likely cost $45,000 to $50,000 or more. He testified that her monthly prescription bill was about $150. The amount of the judgment, $107,000, supports a reasonable inference that the jury based its verdict on the evidence of Ashley's damages and adhered to the court's cautionary instructions. See *Tarleton v. Griffin Fed. Savings Bank*, 202 Ga. App. 454, 455 (2) (b) (415 SE2d 4) (1992) (appellant must show harm and error to prevail). Under these facts, no harm to Goss was shown.

Nor can I agree that the unanswered question about the policy limit injected Goss' wealth into the case. The majority does not cite to a scintilla of evidence in the record which shows that Goss' financial condition was disclosed to the jury. Even assuming that Goss had obtained a $1 million policy, such fact, even if true, would not prove that Goss' business was lucrative, profitable, or flourishing, just that Goss was law-abiding and prudent by obtaining substantial liability insurance protection. Compare *Adams v. Camp Harmony Assn.*, 190 Ga. App. 506, 507 (1) (379 SE2d 407) (1989) (impassioned remarks of defense counsel impermissibly prejudiced jurors by eliciting sympathy that camp would have to be shut down and that the future of "fine little boys" would be obliterated if plaintiffs prevailed).

I believe that the court's carefully crafted curative instruction obviated the need for a mistrial. See *Towe*, 193 Ga. App. at 271 (1). To hold otherwise is to conclude that any question about insurance policy limits, even though not answered, automatically necessitates a mistrial. This is plainly not the law. *Dubose*, 222 Ga. App. at 100. To follow the majority's mechanistic approach is to completely divest a trial court of its right to exercise discretion. Such an approach invites the possibility of abuse, where a savvy attorney who perceives the case is proceeding poorly could strategically elect to ask the forbidden question to trigger an automatic mistrial.

Having found no evidence of a manifest abuse of discretion in the

trial court's use of a proper and complete curative instruction, I must respectfully dissent. See id.

I am authorized to state that Presiding Judge McMurray joins in this dissent.

DECIDED AUGUST 21, 1997 —
RECONSIDERATION DENIED SEPTEMBER 4, 1997 —

*McNatt, Greene & Thompson, Hugh B. McNatt, Richard S. Thompson*, for appellants.

*Salter & Shook, Mitchell M. Shook, Susan S. Shook*, for appellee.