S98G0039. ASHLEY v. GOSS BROTHERS TRUCKING et al.
(499 SE2d 638)

HUNSTEIN, Justice.

The car driven by appellant Regina Ashley was involved in a collision on October 12, 1994 with a tractor-trailer truck driven by appellee Kenneth Ray Gaylor and owned by appellee Goss Brothers Trucking. Ashley filed a negligence suit against the trucking company, its driver, and its insurer, Canal Insurance Company, pursuant to OCGA § 46-7-1 et seq. During cross-examination of one of the trucking company's owners, Ashley's counsel established the existence of the company's liability insurance policy with Canal as is required in a direct action against the insurer under OCGA § 46-7-12 (e). Counsel's next question, however, queried whether that policy was a "one million dollar policy?" Before the owner could answer, opposing counsel objected to the admissibility of the policy limit and moved for a mistrial since evidence of the policy limit was improperly placed before the jury. The trial court sustained the objection but, since the question had not been answered, denied the motion for mistrial and admonished the jury to disregard the question itself as well as the amount of liability insurance involved, as both were irrelevant to the case before them. The jury returned a verdict in favor of Ashley and awarded her $107,000 in damages. The Court of Appeals reversed and remanded the case for a new trial, finding the amount of the insurance policy and the trucking company's wealth and ability to pay were improperly injected into evidence and that the prejudicial nature of this evidence created grounds for a mistrial that could not be cured by the trial court's instructions. *Goss Bros. Trucking v. Ashley*, 228 Ga. App. 354 (492 SE2d 7) (1997). We granted certiorari in this case to address the following question:

Whether the trial court properly denied defendants' mistrial

motion, when (1) no evidence was introduced regarding the amount of insurance coverage available to defendants, and (2) in response to plaintiff's improper question regarding the amount of available coverage, comprehensive curative instructions were given to the jury. See *Carolina Cas. Co. v. Davalos*, 246 Ga. 746 (272 SE2d 702) (1980).

While we agree with the Court of Appeals that a question regarding the limits of liability insurance policy is an improper area of inquiry, we nevertheless reverse because we find the trial court did not abuse its discretion in denying appellees' motion for mistrial since no evidence of the insurance policy limit was introduced by the unanswered question and the trial court gave prompt curative instructions.

"It shall be permissible under [The Motor Carrier Act] for any person having a cause of action arising under this article in tort . . . to join the motor carrier and the insurance carrier in the same action . . . ." OCGA § 46-7-12 (e). In such a case, the existence of liability coverage must be proven to sustain an action against the insurer since the insurer "stands in the shoes" of the motor carrier for liability purposes. *St. Paul Fire &c. Ins. Co. v. Fleet Transp. Co.*, 116 Ga. App. 606 (2) (158 SE2d 476) (1967). Even in a direct action against the insurance company, evidence of the limit of insurance liability coverage should be kept from a jury since it might prejudice the jurors against a defendant and improperly motivate them to recklessly award damages to claimants. *Carolina Cas. Ins. Co.*, supra. See *Denton v. Con-Way Southern Express*, 261 Ga. 41, n. 2 (402 SE2d 269) (1991). But if evidence of the limits of an insurance policy is introduced, the determination of whether it is "so obviously prejudicial" as to demand a mistrial remains within the trial judge's discretion and an appellate court should only interfere with that discretion when "wrong or oppression has resulted from its abuse." *Wallace v. Cates*, 120 Ga. App. 228 (170 SE2d 40) (1969).

In the wake of Ashley's question, the trial court properly sustained counsel's objection and promptly charged the jury to disregard the question itself and not to engage in speculation as to the policy limit since both were, in the judge's twice-repeated instructions, "irrelevant to this case [and have] nothing to do with it." A court's instruction to the jury to disregard evidence is tantamount to an exclusion and may be, as is the case here, sufficient to remove any error which might have resulted from an improper question. *Locke v. Vonalt*, 189 Ga. App. 783 (3) (377 SE2d 696) (1989). Further, Ashley's question did not actually place the limits of the insurance policy either into evidence or before the jury since the witness did not answer the question upon counsel's objection. Georgia law provides

that harmful error does not necessarily result in every instance where an improper question goes unanswered. *Pope v. Firestone Tire &c. Co.*, 150 Ga. App. 396, 401 (5) (258 SE2d 14) (1979); see also *Watson v. Ga. Federal Bank*, 201 Ga. App. 192, 193 (410 SE2d 387) (1991) (unanswered question did not prejudice proceedings even though it may have been a patent attempt to introduce inadmissible evidence).

Nor did the unanswered question introduce any evidence concerning appellees' wealth or their ability to pay any jury award. The Court of Appeals relies on *Adams v. Camp Harmony Assn.*, 190 Ga. App. 506, 508 (1) (379 SE2d 407) (1989) for the proposition that a litigant's financial condition is an improper and prejudicial area of inquiry; however, the mention of ability to pay in that case was clearly egregious and differed from the situation in the case sub judice in that *Adams* involved a statement made by defense counsel to the jury during closing argument that the defendant would be forced to close a charitable institution should they make an award to the plaintiff. Here, although we do not approve of Ashley's unanswered question, we find that it alone did not provide the jurors with an improper glimpse into appellees' financial condition and did not approach the level of impropriety created by counsel in *Adams*. On the contrary, the amount of the jury's award to Ashley indicates that the jurors were not prejudiced against appellees. Rather than indicating any sign of a reckless deliberation based upon speculations on the policy limits, the $107,000 award was grounded in testimony provided by Ashley and her physician concerning her injuries and the resulting damages.[1]

Since the trial court in this case adhered to the prohibition against the presentation to the jury of the policy limit set forth in *Carolina Cas. Ins. Co.*, supra, and kept the policy limit out of evidence by sustaining appellees' objection and providing appropriate curative instructions, and given appellees' failure to show any resulting wrong or oppression from the exercise of the trial court's discretion in this regard, see *Wallace v. Cates*, supra, we reverse as we cannot agree with the Court of Appeals that a mistrial was required here.

*Judgment reversed. All the Justices concur.*

DECIDED MAY 18, 1998.

---

[1] At trial, Ashley adduced evidence of damages she sustained as a result of the collision, including lost wages, current medical bills in excess of $17,000, and injuries to her neck, back and sternum, which a doctor testified could result in permanent pain to Ashley, limits to her strength and mobility, and future medical bills.

*Salter & Shook, Mitchell M. Shook, Susan S. Shook, Jason A. Craig,* for appellant.

*McNatt, Greene & Thompson, Hugh B. McNatt, Richard S. Thompson,* for appellees.